(No. 22264.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JAMES BELCASTRO, Plaintiff in Error.

*Opinion filed April 21, 1934.*

ELLIODOR M. LIBONATI, (JOHN M. LONERGAN, of counsel,) for plaintiff in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, J. ALBERT WOLL, and HENRY E. SEYFARTH, of counsel,) for the People.

Mr. CHIEF JUSTICE ORR delivered the opinion of the court:

This writ of error is sued out by James Belcastro, plaintiff in error, to review the judgment of the municipal court of Chicago entered upon the verdict of a jury finding him guilty of being a vagabond, upon which he was sentenced to serve six months in the house of correction in Chicago. The information containing the charge against him was drawn under the Vagrancy act, (Crim. Code, div. 1, par. 270,) as amended July 10, 1933, and contains all the charges inserted in the act by the amendment, viz.: That defendant was reputed an habitual violator of the laws of this State and of the United States; that he was reputed to be an associate of James Catuara, who is reputed to be an habitual violator of said laws, and that

he was reputed to carry concealed weapons. Prior to his arraignment defendant moved the court to quash the information on the grounds that it stated no offense, and that the statute as amended is unconstitutional and void. These motions were overruled.

The Vagabond act was amended in July, 1933, (Smith's Stat. 1933, chap. 38, par. 578,) by the addition of the following provisions: "All persons who, not being persons authorized by law to carry concealed upon· or about their persons, deadly weapons, are reputed to be habitual violators of criminal laws of this State or of the United States, or to habitually carry concealed on or about their persons or in motor vehicles or other conveyances, pistols, revolvers or other fire-arms, or black-jacks, sling-shots, sand-clubs, sand-bags, metal knuckles, or bludgeons, or to carry or possess with intent to use the same unlawfully against another person or other persons, a dagger, dirk, billy, weapon or instrument of like character, and all persons who are reputed to act as associates, companions or bodyguards of such persons reputed as aforesaid to be such habitual violators of the criminal laws of this State or of the United States; * * * shall be deemed to be, and they are declared to be vagabonds."

Defendant bases his plea for reversal upon several alleged errors, but in the view we take of the case it will not be necessary to consider any but the first, namely, that the amendment to the Vagrancy act as above quoted is unconstitutional, as it seeks to punish an individual for what he is reputed to be, regardless of what he actually is. Defendant claims that such legislation is arbitrary and deprives him of his liberty without due process of law, in contravention of section 1 of article 14 of the Federal constitution and section 2 of article 2 of the State constitution.

The constitution of this State, in section 2 of article 2, states: "No person shall be deprived of life, liberty or property, without due process of law." Administrative as

well as judicial proceedings are governed by the requirement of "due process of law." (*Italia America Shipping Corp.* v. *Nelson,* 323 Ill. 427.) The object of this constitutional safeguard is to preserve the personal and property rights of a person against the arbitrary action of public officials. The wielding of official power under our system of government must be by procedure which will protect persons against the ills arising out of the whims and caprice of officials. (*Sheldon* v. *Hoyne,* 261 Ill. 222; *People* v. *Sholem,* 294 id. 204.) To say that certain acts shall constitute a crime, and to fix the punishment therefor, is indisputably a part of the police power of the State. This power must be exercised, however, not as an unlimited authority but at all times subject to the mentioned restrictions in the Federal and State constitutions. The act of a legislative body declaring what shall constitute a crime must have some relation to the ends sought to be accomplished—*i. e.,* the comfort, welfare and safety of society. (*Ritchie* v. *People,* 155 Ill. 98.) It is the duty of the courts to determine whether the questioned act is in promotion of the comfort, safety and welfare of society and to see whether under the label of a police measure it unlawfully invades the rights of a person or his property. (*Ritchie* v. *People, supra.*) The legislature has the undoubted right to determine when it shall exercise the police power, but it is for the courts to determine what subjects are to be affected by its exercise and that there is reasonable relation between the law and the objects sought to be attained. (*People* v. *Steele,* 231 Ill. 340.) In *Frazer* v. *Shelton,* 320 Ill. 253, this court said: "The end to be secured by the exercise of the police power is the furtherance of the public health, comfort, safety or welfare, and unless an act restricting the ordinary occupations of the citizen can be shown to fall within the police power such act is void as violating the right of the citizen to liberty and pursuit of happiness. Whether or not the regulation

of an occupation has in it the elements of protection to the public health, comfort, safety or welfare is a matter not always easy to determine."

Vagrancy as an offense has long been recognized. It was an offense which existed under the common law. To-day we find that, as defined under the common law, vagrancy has been largely abandoned in favor of new definitions of the offense by our statutes. Such enactments, being the exercise of the police power, are generally looked upon as regulatory measures to prevent crime rather than as ordinary criminal laws which prohibit and punish certain acts as crimes. (66 Corpus Juris, 399.) No legislative body in this country possesses the power to choose associates for citizens. With mere guilty intention, divorced from an overt act or outward manifestation thereof, the law does not concern itself. (*Ex parte Smith,* 135 Mo. 223, 36 S. W. 628.) This court held in *People* v. *Klein,* 292 Ill. 420, which arose under the Vagabond act, that a defendant charged with being a vagabond cannot be convicted solely on testimony that he is reputed to be a pick-pocket. The fact that he is a pick-pocket or is otherwise within the statute must be proved beyond a reasonable doubt.

Until the Vagabond act was amended in 1933 it did not concern itself with what a person is reputed to be. When we consider the phrases "reputed to be" and "who are reputed to act," and the word "reputed," as used in the amendment to the act, we are dealing with something which lacks body or substance. The word "repute," when used as a noun, is defined in Webster's New International Dictionary as "opinion, estimation or judgment." When used as a verb the same authority defines it as "to hold in thought, to esteem, to hold, to think, to attribute or to impute." As used by the legislature in the amendment, the word "repute," used alone or as a part of the phrases mentioned, is synonymous with the words "reputation" and "opinion." As the act now stands it is silent as to the

degree or extent of reputation or opinion necessary to warrant action under the amendment. The legislature has left this important question of reputation to be arbitrarily decided by individuals, without prescribing any rules, basis or limitations to act as a guide in forming judgment. The general code in Ohio provided that a male person able to perform manual labor who had not made a reasonable effort to procure employment was a vagrant. The constitutionality of the law was attacked in *Ex parte Smith,* 13 Ohio N. P. (n. s.) 278. The court there held the definition of vagrant far too indefinite. *People* v. *Beak,* 291 Ill. 449, involved an alleged violation of the Motor Vehicle law. ·We there held: "If the law is of such doubtful construction and describes the act denominated as a crime in terms so general and indeterminate as to make the question of criminality dependent upon the opinions of individuals who may happen to constitute the court and jury, and of such a nature that honest and intelligent men are unable to ascertain what particular act is condemned by the State, the law is incapable of enforcement and will be held to be null and void. The dividing line between what is lawful and what is unlawful cannot be left to conjecture."

The ascertainment of a person's reputation may, and generally does, mean only the collection of expressions of opinion from different people. Once collected you have something you can rarely demonstrate as an existent fact. One's reputation might be good among one class of people or in one section of the city and bad among other classes or in other localities. Applying these observations to the amendment under consideration, it will be seen that the reputation of one charged with the crime of vagrancy may arise out of the collected opinions of law enforcement officers on the one hand and of his neighbors, business men and friends on the other. So far as the amendment is concerned, these opinions will all be formed without the aid of rules, limitations or restrictions to guide them. For

such proof to be submitted means that a court is bound to say that a person is a criminal because of a reputation resulting from opinions which may or may not be true. The establishment of a reputation required under the amendment means that a witness will be testifying to opinions—not to facts. Opinion evidence, or the testimony of experts and specialists, is usually held admissible only on matters not within the knowledge of men of ordinary education and experience. (*People* v. *Schultz,* 260 Ill. 35.) No exception to the general rule is warranted here, as the kind of opinion required by the amendment to the Vagrancy act may clearly be furnished by individuals possessing only common education and experience. Here the *corpus delicti* must be proved by reputation, which might easily be based upon supposition or rumor rather than upon knowledge. Character is what a person is; reputation is what he is supposed to be. (*Kenyon* v. *People,* 26 N. Y. 203; 11 Corpus Juris, 289.) If the legislature leaves to administrative officers the determination of what the law shall be, or to determine what acts are necessary to effectuate the law, such delegation of authority is void. 1 Sutherland on Stat. Const. (2d ed.) p. 148.

We must hold the amendment of 1933 to the Vagrancy act to be void, not only because it is arbitrary and unreasonable legislation and will deprive citizens of their liberty without due process of law, in violation of the State and Federal constitutions, but also because it clothes administrative officers with arbitrary and discriminatory powers. This conclusion only affects the amendment to the Vagrancy act hereinabove quoted and does not affect the remainder of that act.

The judgment of the municipal court of Chicago is reversed.                              *Judgment reversed.*

Mr. JUSTICE SHAW specially concurring: I agree with the conclusion but not in all that is said in the opinion.